IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.H. JOHNSON CONSULTING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-08759 |
| ) | |
| ROOSEVELT ROADS NAVAL STATION ) | Judge Robert M. Dow, Jr. |
| LANDS AND FACILITIES ) | |
| REDEVELOPMENT AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff C.H. Johnson Consulting, Inc. ("CHJC") has sued Defendant Roosevelt Roads Naval Station Lands and Facilities Redevelopment Authority ("Roosevelt Roads") for breach of contract, unjust enrichment, and an equitable lien. Defendant has moved to dismiss for lack of personal jurisdiction, or in the alternative, requested a change of venue to the United States District Court for the District of Puerto Rico [11], arguing that venue is not proper in the Northern District of Illinois. For the reasons stated below, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction or improper venue [11] and also denies Plaintiff's motion to open and supplement briefing schedule [28].

**I.     Background**

Rule 12(b)(2) states that an action against a party over whom the Court lacks personal jurisdiction must be dismissed. Fed. R. Civ. P. 12(b)(2). Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. See *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). When determining whether Plaintiff has met its burden, jurisdictional

allegations pleaded in the complaint are accepted as true unless proved otherwise by affidavits or exhibits. See *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). In addition, any conflicts in the affidavits regarding relevant facts must be resolved in Plaintiff's favor. See *Purdue*, 338 F.3d at 782 (citations omitted). But "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id*. at 783.

According to Defendant, Roosevelt Roads is a "public corporation and a governmental entity of the Commonwealth of Puerto Rico," created for the purpose of economic redevelopment of the lands and facilities at a former Navy base located in Ceiba, Puerto Rico, and to regulate usage of the lands and facilities. Defendant's place of business is located in San Juan, Puerto Rico. In 2009, Defendant was looking for a firm to provide consultation in the development of the former Navy base. Roosevelt Roads' executive director at that time, Jaime Gonzalez, had worked with Plaintiff CHJC in 1997, when the Puerto Rico Tourism Company hired CHJC for consultation in developing Puerto Rico's new convention center. CHJC is an Illinois corporation that provides economic development and planning services.

In February 2009, Gonzalez contacted Charles Johnson, the president of CHJC, to discuss the possibility of retaining CHJC's services. Following their conversation, CHJC and Roosevelt Roads entered into a series of contracts and agreements for the redevelopment of lands located in Ceiba, Puerto Rico. The first contract covered the period of May 13, 2009 through June 30, 2009. The second contract covered the period of July 1, 2009 through June 30, 2010, and the

third contract covered the period of May 2, 2010 through June 30, 2010.[1] Each contract was signed and executed in Puerto Rico and was entered for the purposes of securing and providing consulting services in strategic planning, advice in gaming legislation, and financial modeling in order to develop the Ceiba property. Gonzalez traveled to Chicago in June 2009 to discuss renewal of the contract for the period of July 2009 through June 2010. During this time, Gonzalez and Johnson also prepared for a briefing to be held at an economic summit in Puerto Rico in late June 2009.

According to CHJC, Roosevelt Roads also authorized CHJC to hire sub-contractors—including Chicago Consulting Studios (CCS), a Chicago-based consulting firm—to perform work on the 2009-2010 contract. When CCS completed work under its 2009 sub-contract with CHJC, which term ended December 31, 2009, Roosevelt Roads contracted directly with CCS for CCS's services.

As a result of Roosevelt Roads' dealings with CHJC and CCS, Erwin Kiess, who replaced Gonzalez as executive director of Roosevelt Roads, traveled to Chicago several times between December 2009 and August 2011. Roosevelt Roads also participated in telephone calls and teleconferences with CCS and CHJC in Chicago during the time period at issue and exchanged "hundreds of emails, faxes, and phone calls" with CHJC and CCS. In total, CHJC alleges that Roosevelt Roads held approximately nine meetings in Chicago to discuss execution of the project with CHJC and CCS. Although the current record does not support a finding that a Roosevelt Roads' representative was present in person for each meeting, it appears that a Roosevelt Roads' representative was present for at least five or six of the nine meetings and also participated by phone during other meetings. In turn, CHJC representatives traveled to Puerto

---

[1] CHJC also alleges that Roosevelt Roads expressly authorized two contract extensions in the amount of $80,000 each.

Rico on various occasions to perform obligations under the contract. However, according to CHJC's president, most of the work performed by CHJC was performed in Chicago.

## II. Personal Jurisdiction

### A. Legal Standard

A federal court sitting in diversity in Illinois will have personal jurisdiction over a defendant only if jurisdiction is proper under Illinois's long-arm statute. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). Thus, courts examine three "distinct obstacles to personal jurisdiction:" (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law. See *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). But because the Illinois long-arm statute authorizes personal jurisdiction to the constitutional limit, the analysis "collapse[s] into two constitutional inquiries — one state and one federal." *RAR*, 107 F.3d at 1276.

The Seventh Circuit has noted that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003), despite a cautionary pronouncement in a 1990 Illinois Supreme Court decision suggesting that the state and federal standards may not be co-extensive. See *Rollins v. Elwood*, 565 N.E.2d 1302, 1316 (Ill. 1990); see also *Hyatt Int'l*, 302 F.3d at 715 (acknowledging *Rollins*, but noting that even if the Illinois state and federal due process standards hypothetically might diverge, no basis for such a divergence existed in the case before it). In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice. See *Hyatt*, 302

F.3d at 715; *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 827 N.E.2d 1031, 1037 (Ill. App. Ct. 1st Dist. 2005) (noting that the court had not located any post-*Rollins* cases finding that federal due process requirements had been met where Illinois due process requirements were not).

The federal test for personal jurisdiction under the Due Process Clause of Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" requirement ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425-26 (7th Cir. 2010). General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt*, 302 F.2d at 713.

On the other hand, specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or

"relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.* The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit in that forum. *Burger King,* 471 U.S. at 472. This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found.,* 338 F.3d at 780. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.*

Finally, even if the purposeful availment and specific jurisdiction requirements have been met, the Court also must consider whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the interstate judicial system's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These considerations are sometimes used to establish the reasonableness of jurisdiction in lieu of a strong showing of minimum contacts. *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

B. Analysis

Plaintiff CHJC alleges that Defendant Roosevelt Roads has had "continuous and systematic" contacts with Illinois sufficient to justify both general and specific personal jurisdiction. Not surprisingly, Plaintiff's argument with respect to general jurisdiction is brief. Simply put, the record before the Court does not support a finding of general jurisdiction. Instead, as demonstrated below, Roosevelt Roads' contacts with the state of Illinois (at least those that are reflected in the record before the Court) arise out of the contracts with CHJC that are the subject of this dispute, as well as additional sub-contracts which arose from the initial contract with CHJC.

Thus, the Court moves to the specific jurisdiction inquiry. See *Hyatt Int'l*, 302 F.3d at 713 (explaining that where a defendant's contacts with the forum state are more limited, the plaintiff's only option is to establish specific personal jurisdiction). Plaintiff must establish that: (1) Roosevelt Roads has purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business in Illinois; (2) the alleged breach of contract arises out of Roosevelt Roads' Illinois related-activities; and (3) subjecting Roosevelt Roads to specific jurisdiction in Illinois comports with traditional notions of fair play and substantial justice. See *Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010) (citing *Burger King,* 471 U.S. at 472; *Int'l Shoe,* 326 U.S. at 316).

   1.   *Purposeful Availment*

A contract with an Illinois plaintiff is insufficient, by itself, to justify personal jurisdiction. See *Centurion Serv. Grp. v. SBMC Healthcare, LLC,* 2013 WL 1903292, at *7

(N.D. Ill. May 7, 2013)). The specific jurisdiction inquiry focuses on the totality of the circumstances and the Seventh Circuit has instructed district courts not to employ a "'mechanical or quantitative' test." *Citadel*, 536 F.3d at 761 (Quoting *Int'l Shoe,* 326 U.S. at 319). *Burger King* instructs that "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," provide a basis from which to determine if Defendant's contacts are sufficient for purposeful availment. *Burger King,* 471 U.S. at 478. Illinois courts often look to "who initiated the transaction, where the contract was entered into, where the performance of the contract was to take place, and where the contract was negotiated." *Citadel*, 536 F.3d at 762. Ultimately, none of the factors is dispositive but each "can support an exercise of jurisdiction in an appropriate case." *Id.* at 762 n. 4 (quoting an unrelated case with the same plaintiff *Citadel Grp. Ltd. v. Merle W. Med. Ctr., Inc.*, 06-C-6162, 2007 WL 5160444 (N.D. Ill. June 13, 2007)). The crucial question ultimately is whether Roosevelt Roads should have "reasonably anticipate[d] being haled into court" in Illinois. *Volkswagen*, 444 U.S. at 287.

Roosevelt Roads does not dispute that it initiated the contact between the parties. See *Heritage House Rest., Inc. v. Cont'l Funding Grp., Inc.,* 906 F.2d 276, 284 (7th Cir. 1990) (holding that where a defendant "knowingly has reached out to [a] corporation and created a continuing relationship or obligation, it is subject to the jurisdiction of Illinois courts"). Indeed, the current record strongly supports an inference that Roosevelt Roads intended to create a continuing relationship with Illinois-based CHJC. Jaime Gonzalez, Roosevelt Roads' executive director at the time that the initial contract was formed, had worked with CHJC in 1997, when the Puerto Rico Tourism Company hired CHJC for consultation in the planning of Puerto Rico's new convention center. In February 2009, Gonzalez contacted Charles Johnson to discuss the

possibility of retaining CHJC's services a second time. Following their conversation, CHJC and Roosevelt Roads entered into a series of contracts and agreements for the redevelopment of lands located in Puerto Rico. Thus, Gonzalez's call to Johnson was not an isolated communication, nor did the relationship arise out of the "unilateral activity" of CHJC. In fact, quite the opposite: Gonzalez *contacted* Johnson in Illinois to request his ongoing assistance with the Ceiba lands project.

Although it appears that the contracts were signed in Puerto Rico, Plaintiff has put forth (and Defendant has not contested) evidence that representatives of Roosevelt Roads, including former and current executive directors Jaime Gonzalez and Erwin Kiess, traveled to Illinois approximately five or six times for purposes related to the contract at issue or the sub-contracts arising out of the contract at issue. The visits involved negotiations about contract extensions and modifications as well as discussions about the work to be performed and the division of labor among the different sub-contractors.

Here, Roosevelt Roads not only made several trips to Illinois for the specific purpose of working through issues related to its contracts with CHJC and CCS, it also communicated extensively by mail and wire with Illinois' entitites by exchanging "hundreds of emails, faxes, and phone calls" with CHJC and CCS. "As the Supreme Court wrote in *Burger King,* 'a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.'" *Purdue*, 338 F.3d at 781 (quoting *Burger King,* 471 U.S. at 476). The Seventh Circuit went further in *Purdue*, stating that "ongoing communications * * * through use of mail, telephone, facsimile and other means of communication" are probative of purposeful availment. *Id.* at 785. The numerous visits, phone calls, emails, and other correspondence between the

parties constitute "sustained and intensive contact" over the course of two to three years with the specific aim of negotiating the terms of a contract. Contacts such as these are not "random, fortuitous, or attenuated." *Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, 2008 WL 4104357, *5 (N.D. Ill. Aug. 25, 2008) (internal quotation marks omitted). Additionally, CHJC maintains that it primarily performed its end of the contract in Illinois. While the end result was the development of property in Puerto Rico, the authorization was not for CHJC to begin construction. The authorization encompassed project development, which, based on the limited record before the Court,[2] consisted of consulting services carried out (for the most part) in Illinois. A plaintiff's performance supports jurisdiction where that performance is on behalf of the defendant, as a result of the defendant's activities, and therefore is not unilateral. See *Citadel*, 536 F.3d at 764 ("[Plaintiff] took steps on [Defendant's] behalf, with [Defendant's] authorization, to procure the necessary prerequisites to constructing a building, and so its actions were not the 'unilateral activities' of a party having some relationship with an out-of-state defendant.").

The instant case is closely analogous to *Citadel* in several important respects. Roosevelt Roads knowingly created a relationship authorizing CHJC to act on its behalf in Illinois to provide consultation in the development of the former Navy base. While the final product of the relationship, the former base (akin to the building in *Citadel*), was to be outside of the forum, the purpose of this contract was to consult on the development primarily from Illinois. The parties clearly contemplated a relationship continuing for at least a year. The relationship naturally was

---

[2] The record is not particularly detailed regarding the specific tasks performed by CHJC, but the Court is less concerned with the "scope of the parties obligations at this juncture," and more concerned with Defendant's contacts with Illinois which gave rise to the work performed by CHJC. See *Citadel*, 536 F.3d at 763. In any event, at this stage, the Court resolves conflicts in the record in Plaintiff's favor and thus credits CHJC's assertion that the contracts were substantially performed in Illinois. See *Purdue*, 338 F.3d at 782 (citations omitted).

based on mail, e-mail, and telephone correspondence, but also included several trips to Illinois by Roosevelt Roads representatives. Roosevelt Roads knew that CHJC and its subcontractors would be providing services from Illinois, which could have future legal consequences. Roosevelt Roads initiated significant phone, e-mail, mail, and in-person contacts with CHJC in Illinois throughout the formation of the contract. Via these contacts, Roosevelt Roads actively negotiated with CHJC, enlisted CHJC for the project, and presumably sent payment to CHJC in Illinois. In the court's view, the nature of the contract, to provide a service from the forum state along with the "continuing obligations and repeated contacts," which were contemplated at the outset, crossed "the threshold from offending due process to sufficient minimum contacts." *Id.* at 763. In sum, Plaintiff CHJC has satisfied its burden of demonstrating that Roosevelt Roads had sufficient minimum contacts with Illinois such that it should have reasonably anticipated that CHJC may bring an action against it in Illinois.

## 2. *Forum Contacts Relating to this Controversy*

"Out-of-state residents may avail themselves of the benefits and protections of doing business in a forum state, but they do so in exchange for submitting to jurisdiction in that state for claims arising from or relating to those activities." *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 430 (7th Cir. 2010). The Seventh Circuit has embraced this "tacit quid pro quo" test such that specific personal jurisdiction is justified where "the defendant's contacts * * * gave the defendant fair warning that the very business it sought in [the forum] might injure [a forum] resident." *Id.*

A contract between the parties alone is not sufficient to establish relatedness. Rather, the contacts must be "*between the parties in regard to the disputed contract.*" *RAR, Inc. v. Turner*

*Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)) (emphasis in original). This action certainly arises from the contract between the parties, the formation of which also gave rise to the sub-contacts discussed above. However, to be clear, the Court has not considered CHJC's activities with third parties in Illinois as relevant to establish Roosevelt Roads' purposeful availment. Instead, the Court found relevant Roosevelt Roads' contacts *authorizing* CHJC to engage third parties in Illinois. In evaluating the merits of this contractual dispute, the negotiations, award, payment, and fulfillment of contract obligations by each party will be relevant. More may be considered for a resolution on the merits, but the contacts need only be relevant to the dispute, not encompass the entirety of that dispute. *uBID,* 623 F.3d at 430 (approving of a Third Circuit decision noting that "defendant's contacts with [the forum] proved little about the plaintiff's negligence claim, but undoubtedly gave the defendant fair warning."). Here, Roosevelt Roads' contacts with CHJC, as well as its contacts authorizing CHJC to contract with third parties, weigh in favor of finding jurisdiction over Roosevelt Roads.

    3.    Fairness

Purposeful availment is not the end of the analysis, for Roosevelt Roads claims that litigating in Illinois would offend traditional notions of fair play and substantial justice. While Roosevelt Roads presumably would prefer to litigate in Puerto Rico, "[w]hen minimum contacts have been established, often the interest of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.,* 480 U.S. 102, 115 (1987). Roosevelt Roads makes no convincing argument that the burdens in this case will be particularly severe. There is no indication that the number of witnesses will be particularly large or that the process

of discovery will be particularly complex due to the geography, much less that the process would be easier overall if the case were litigated elsewhere, all of which are factors that bear on the analysis. *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.,* 262 F.Supp.2d 898, 909 (N.D. Ill. 2003) (citing *Logan Prods., Inc. v. Optibase, Inc.,* 103 F.3d 49, 53 (7th Cir. 1996)). Instead, it appears that employees of Plaintiff CHJC and its subcontractors will be the primary witnesses, and none of them reside in Puerto Rico.

In short, there is no reason to believe that this case will be any different from the mine run of cases involving diverse parties. Once a plaintiff presents evidence of minimum contacts, it becomes a defendant's job to show that traditional notions of fair play and substantial justice would be offended if the defendant were haled into the forum. *Burger King,* 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."); *id.* (noting that a defendant who claims substantial inconvenience "may seek a change of venue" and that most defendant considerations can be "accommodated through means short of finding jurisdiction unconstitutional"); *Asahi,* 480 U.S. at 116 (Brennan, J., concurring) (acknowledging that it would be a "rare case[ ]" for personal jurisdiction to be inappropriate where "the defendant has purposefully engaged in forum activities"). Defendant has not carried that burden here.

Further, Illinois plainly has an interest in enforcing commercial transactions to which its citizens are a party. See, *e.g., McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957) (California had a "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims"); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d at 432 (7th Cir. 2010) (upholding jurisdiction in part because of "Illinois's significant interest in providing a

forum for its residents to seek relief when they suffer harm in Illinois from a wrong that occurred at least in part in Illinois."). Defendant Roosevelt Roads' assertion, unaccompanied by any showing of a substantial hardship, does not prohibit an Illinois-based court from exercising personal jurisdiction.

### B. Venue

In addition to moving to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2), Defendant's motion also argues that venue is not proper in the Northern District of Illinois. Rule 12(b)(3) provides that a party may move to dismiss a case not filed in a proper venue. Fed. R. Civ. P. 12(b)(3). Venue is proper in: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction respect to such action." 28 U.S.C. § 1391(b)(1)-(3). For the purposes of § 1391(b)(1), a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(c)(2).

In considering a motion to dismiss for improper venue, the plaintiff bears the burden of establishing proper venue. See *Bell v. Woodward Governor Co.*, 2004 WL 1498145, at *1 (N.D. Ill. July 2, 2004) (citing *Grantham v. Challenge-Cook Bros., Inc. et al.,* 420 F.2d 1182, 1184 (7th Cir. 1969)). The burden is met by making a *prima facie* showing that venue is proper. *Id.* As

with the jurisdiction inquiry, the Court will resolve all factual disputes in Plaintiff's favor. See *Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983).

Plaintiff asserts that venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). Under 28 U.S.C. § 1391(b)(2), venue is proper in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Additionally, pursuant to section § 1391(b)(1) and (c)(2), Roosevelt Roads, a corporation, is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question * * *." 28 U.S.C. § 1391(c)(2). See *Signode v. Sigma Technologies Int'l., LLC*, 2010 WL 1251448, at *4 (N.D. Ill. March 24, 2010) (citing a string of cases that state that LLCs are considered "corporations" for the purposes of 28 U.S.C. § 1391(c)); *Advocate Fin., L.L.C. v. Parker Interests, L.L. C.,* 2008 WL 2773650 at * 1 (M.D. La. July 16, 2008) (pointing out that "it is generally accepted that unincorporated business associations such as partnerships and limited liability companies are analogous to corporations for venue purposes"). Because Illinois has more than one judicial district, Defendant is "deemed to reside in any district in [Illinois] within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

Defendant's arguments regarding venue track its arguments regarding personal jurisdiction. For the reasons discussed above, the Court has concluded that personal jurisdiction is appropriate in Illinois. At this early stage in the proceedings, and because no evidentiary hearing has been held on this matter, Plaintiff is responsible only for making a *prima facie* showing of why venue is appropriate in this District: "[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit

of an evidentiary hearing, ... the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Richter v. INSTAR Enterprises International, Inc.*, 594 F. Supp. 2d 1000, 1005 (N.D. Ill. 2009) (citing *Purdue,* 338 F.3d at 782 (internal quotation marks omitted)).[3] Defendant offers no persuasive evidence to contradict Plaintiff's assertions or to disturb Plaintiff's choice of forum. For the same reasons that the Court concludes that personal jurisdiction over Roosevelt Roads exists, venue is appropriate in this District under § 1391(b)(1) and (2).[4]

## IV. Conclusion

For the reasons stated above, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction or improper venue [11] and also denies Plaintiff's motion to open and supplement briefing schedule [28].

Dated: November 5, 2013

                                                                   _____
                                                                   Robert M. Dow, Jr.
                                                                   United States District Judge

---

[3] In *Richter*, the Court was discussing a motion to dismiss for lack of personal jurisdiction, in addition to a motion to dismiss for improper venue. But because "[i]n ruling on a motion to dismiss for improper venue, the Court follows the same standard as for a Rule 12(b)(2) dismissal," the analogy between *Richter* and the case at hand still holds true. *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1027 (N.D. Ill. 2009).

[4] To the extent that Defendant alternatively seeks to transfer venue pursuant to § 1404, Defendant's motion falls far short of its burden (as the moving party) of establishing "that the transferee forum is clearly more convenient." See *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986) (moving party has the burden of establishing "that the transferee forum is clearly more convenient," based on the particular facts of the case); see also *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Defendant has not even cited, let alone undertaken the analysis required by, § 1404, such as putting forth arguments and evidence related to factors such as (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the interests of justice, and (5) the location of the material events giving rise to the case. See *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir. 1996) (listing the first four statutory factors); see also *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, *2-3 (N.D. Ill. Sept. 18, 2009) (elaborating on sub-factors). Instead, Defendant has raised § 1391 and argued that venue is not proper in the Northern District of Illinois.